Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Sandra LaMell*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

|  |  |
|---|---|
| | Case No. |
| Sandra LaMell, | **COMPLAINT** |
| Plaintiff, | |
| v. | |
| The Hartford Life and Accident Insurance Company, | |
| Defendant. | |

Now comes the Plaintiff Sandra LaMell (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendant, she states:

### *Jurisdiction*

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.      At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3.      Upon information and belief, MidFirst Bank (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by The Hartford Life and Accident Insurance Company (hereinafter referred to as "Hartford").  The specific Hartford group long-term disability policy is known as Group Policy No.: GLT674274 (hereinafter referred to as the "Policy").  The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees.

4.      Upon information and belief, the Policy was included in and part of an employee benefit plan, specifically named the Group Long Term Disability Plan for Employees of MidFirst Bank (hereinafter referred to as the "Plan") which was created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5.      Upon information and belief, Hartford functioned as the claim administrator of the Policy.  However, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Hartford.

6.      Hartford operated under a financial conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

7.     Hartford's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

8.     Hartford conducts business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### Venue

9.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### Nature of the Complaint

10.     Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as a result of being found disabled in this action.

11.     After working for the Company as a loyal employee in the position as a First VP Commercial Product Management, Plaintiff became disabled on or about September 1, 2015, and has remained continuously disabled since that date due to serious medical conditions.

12.     Following the onset of her disability, Plaintiff filed a claim for long-term disability benefits under the relevant Policy which was administered by Hartford.  Hartford made every decision in Plaintiff's long-term disability claim.

13.     Upon information and belief, the relevant Hartford Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

"Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:

- Your Occupation during the Elimination Period; and

- Your Occupation following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings.

14.     In support of her claim for long-term disability benefits, Plaintiff submitted to Hartford medical evidence which supported her allegation that she met the definition of disability as defined in the relevant Policy.

15.     Hartford paid Plaintiff disability benefits during the period of December 1, 2015 through January 26, 2016, while it completed its review of her claim, without admitting liability.

16.     As part of its review of Plaintiff's claim for long-term disability benefits, Hartford obtained medical records only "paper reviews" of Plaintiff's claim from two physicians of its choosing, Dale Panzer, M.D. and Sanjiv Modi, M.D.

17.     Upon information and belief, Plaintiff asserts Drs. Panzer and Modi are long time medical consultants for Hartford and/or the disability insurance industry.  As a result, Drs. Panzer and Modi may have incentives to protect their own consulting relationships with Hartford and/or the disability insurance industry by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and that supported the denial of Plaintiff's claim.

18.     In a letter dated January 22, 2016, Hartford informed Plaintiff it was terminating her disability benefits effective January 26, 2016 and denying her claim, even though there was no evidence of medical improvement in her disabling conditions.

19.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Hartford's January 22, 2016 denial of her claim and submitted additional medical, vocational and lay-witness evidence supporting her appeal and her allegation that she is disabled and meets the definition of disability in the Policy.

20.     In support of her claim, Plaintiff submitted to Hartford a narrative letter dated July 15, 2016, authored by her board certified treating physician who opined Plaintiff is unable to work by stated, "…I believe The Hartford is wrong to deny her ongoing disability."

21.     Plaintiff also submitted to Hartford a Functional Capacity Evaluation report dated April 8, 2016, wherein after an extensive several hour evaluation, a qualified physical therapist concluded that, "…[Plaintiff] would be physically unable to perform a job description at the *sedentary work level* on a full-time basis." (Original emphasis).

22.     Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated July 19, 2016, who after interviewing Plaintiff and reviewing the aforementioned evidence along with the definition of disability in the Policy concluded, "…it is my professional opinion to a reasonable degree of vocational probability that [Plaintiff] is totally disabled from a physical and cognitive perspective and should be granted benefits based on Hartford's criteria of disability."

23.     Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they have not only on her ability to work in her prior occupation, but also in any occupation or in any work environment.

24.     Plaintiff also submitted to Hartford three (3) sworn affidavits authored by herself, a long-time friend and her sister, who all confirmed she is unable to work in any occupation and that her medical conditions had not improved in any meaningful way since the date she originally became disabled.

25.     During the period of time Hartford was reviewing her claim, Plaintiff applied for, was approved for and received Social Security disability benefits through the Social

Security Administration (hereinafter referred to as "SSA").   Plaintiff received Social Security disability benefits through the maximum date those benefits are payable, her normal retirement age.

26.    Plaintiff informed Hartford that her claim for Social Security disability benefits had been approved and she submitted documentation to Hartford from the SSA which confirmed the approval.   For its consideration in her claim, Plaintiff also submitted to Hartford a complete copy of her Social Security disability claim file.

27.    The SSA found Plaintiff became disabled from engaging in *any gainful occupation* which may have existed in the national economy as of September 1, 2015. Plaintiff's medical evidence was so persuasive that SSA approved her claim without her even needing to attend a hearing before an Administrative Law Judge.

28.    The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Hartford Policy.   Therefore, the SSA's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the unreasonableness of Hartford's decision to terminate and deny Plaintiff's claim and benefits.

29.    As part of its final review of Plaintiff's claim for long-term disability benefits, Hartford obtained medical records only "paper reviews" of Plaintiff's claim from three physicians of its choosing, Drs. Mark Levin, Steven Dyckman and Jamie L. Lewis.

30.    Upon information and belief, Plaintiff asserts Drs. Levin, Dyckman and Lewis may be long time medical consultants for Hartford and/or the disability insurance industry.   As a result, Drs. Levin, Dyckman and Lewis may have incentives to protect their own consulting relationships with Hartford and/or the disability insurance industry by providing medical records only paper reviews, which selectively review or ignore evidence

1    such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are
2    favorable to insurance companies and that supported the denial of Plaintiff's claim.

3    31.    On September 26, 2016, Drs. Levin, Dyckman and Lewis contacted
4    Plaintiff's board certified treating physician with written questions for his response, but they
5    never provided Plaintiff's treating physician with copies of their reports for his response.

6    32.    In a letter dated October 25, 2016, Plaintiff's board certified treating
7    physician responded to the questions asked by Drs. Levin, Dyckman and Lewis by
8    reiterated his opinion that, "…[Plaintiff] is unable to carry on her previous work…or to do
9    any full-time job..."

10   33.    In letters dated July 19, 2016, August 2, 2016 and September 15, 2016, in
11   order to engage Hartford in a dialogue so she could perfect any alleged deficiencies in her
12   claim, Plaintiff requested a complete copy of any and all medical records only "paper
13   reviews" (like the ones completed by Drs. Levin, Dyckman and Lewis) from Hartford and
14   the opportunity for her and her medical professionals to respond to the reviews prior to
15   Hartford rendering a determination in her claim.

16   34.    Prior to rendering its final denial in Plaintiff's claim, Hartford refused to
17   honor Plaintiff's request and never shared with her the medical records only "paper
18   reviews" authored by Drs. Levin, Dyckman and Lewis so she could respond to the reports
19   and perfect her claim.  Hartford's failure to provide Plaintiff with the opportunity to respond
20   to Drs. Levin, Dyckman and Lewis' reports is an ERISA procedural violation, it precluded a
21   full and fair review pursuant to ERISA and also violated Ninth Circuit case law. On this
22   issue, the Ninth Circuit held in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d
23   666, 680 (9th Cir. 2011):

24       "The plan evidently based its denial in large part on review of Salomaa's file by two
25       physicians, one for the first denial, *another for the final denial.* They both wrote

26

their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer.  The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' *A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement."* (emphasis added).

35.    In a letter dated November 23, 2016, notwithstanding Plaintiff's aforementioned evidence which proved she met the definition of disability in the Policy, Hartford notified her that it had denied her claim for long-term disability benefits, even though there was no evidence that her disabling medical conditions had improved in a manner that would allow her to return to her prior occupation.

36.    In its denial letter dated November 23, 2016, Hartford notified Plaintiff she had exhausted her administrative levels of review and that she could file a civil action lawsuit in federal court pursuant to ERISA.

37.    Hartford's November 23, 2016 denial letter is clear evidence that it violated its fiduciary duty and failed to provide a full and fair review, while in the process committing ERISA procedural violations that were specifically enacted to protect individuals such as the Plaintiff.  Hartford violated ERISA for numerous reasons including but not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's voluminous reliable evidence which proved that she met the definition of disability in the Policy.

38.    In evaluating Plaintiff's claim on appeal, Hartford owed her a fiduciary duty and it had an obligation pursuant to ERISA to administer it solely in Plaintiff's best interests which it failed to do. [1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone,

39.     Hartford failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary; this action denied her the ability to perfect her claim and to prove to Hartford she is disabled as that term is defined in the Policy.  Hartford's failure to investigate the claim, and to engage in this dialogue and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim, is an ERISA procedural violation, it also violates Ninth Circuit case law and is evidence she did not receive a full and fair review.

40.     Plaintiff asserts Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to have Plaintiff's claim reviewed by truly independent medical professionals; by failing to obtain an Independent Medical Examination when the Policy allowed for one which raises legitimate questions about the thoroughness and accuracy of its review and the denial of Plaintiff's claim; by failing to credit Plaintiff's reliable evidence including the approval of her Social Security disability claim; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or by de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by failing to consider all of her medical conditions and the work limitations set forth in her medical evidence as well as the impact the combination of these medical conditions and limitations have on her ability to work in any occupation; by failing to engage Plaintiff in a dialogue so she could respond to the reviewing physicians' reports by submitting the necessary evidence to perfect her claim so

---

489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1  she could prove that she is "disabled" as that term is defined in the Policy, and by failing to

2  consider the impact the side effects from Plaintiff's medications would have on her ability to

3  engage in any occupation.

4        41.    Plaintiff asserts a reason Hartford provided an unlawful review which was

5  neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to

6  its conflict of interest that manifested as a result of the dual roles Hartford undertook as the

7  decision maker and the payor of benefits.  Hartford's conflict of interest provided it with a

8  financial incentive to deny Plaintiff's claim.

9        42.    When Hartford denied Plaintiff's claim, it saved a significant amount of

10  money.

11        43.    Plaintiff is entitled to discovery regarding Hartford's aforementioned conflicts

12  of interest.  Plaintiff is also entitled to discovery regarding the conflicts of interest of any

13  third party vendor hired by Hartford to retain a reviewing medical professional in Plaintiff's

14  claim and of *any* individual who reviewed her claim.

15        44.    The Court may properly weigh and consider extrinsic evidence regarding the

16  nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation

17  which may have impacted or influenced Hartford's decision to deny her claim.

18        45.    With regard to whether Plaintiff meets the definition of disability set forth in

19  the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even

20  if the Court concludes the Policy confers discretion, the unlawful violations of ERISA

21  committed by Hartford as referenced herein abused any discretion that may have been

22  afforded in the Policy and are so flagrant that they justify *de novo* review.

23        46.    As a direct result of Hartford's decision to deny Plaintiff's disability claim,

24  she has been injured and suffered damages in the form of lost long-term disability benefits.

25

26

47.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability benefits, prejudgment interest, reasonable attorney's fees and costs from Defendant.

48.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendant's nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order finding that the evidence in Plaintiff's claim is sufficient to prove that she is disabled and meets the definition of disability in the Plan and/or Policy and is entitled to disability benefits from the date she was first denied these benefits through the date of judgment, with prejudgment interest thereon;

B.     For an Order directing Defendant to continue paying Plaintiff the aforementioned benefits until such a time as she meets the conditions for the termination of benefits;

C.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g), including for any Court ordered remand to the Plan Administrator and/or Defendant; and

D.     For such other and further relief as the Court deems just and proper.

DATED this 6th day of February, 2017.

SCOTT E. DAVIS. P.C.

By:     */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff

-11-